272-07/MEU/MAM
FREEHILL HOGAN & MAHAR LLP
Attorneys for Plaintiff
AWB LIMITED
80 Pine Street
New York, NY 10005
(212) 425-1900
(212) 425-1901 fax
Michael E. Unger (MU 0045)
Manuel A. Molina (MM 1017)




UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
AWB LIMITED,

Plaintiff,

- against –

BREAKBULK MARINE SERVICES LTD.,

Defendant.
---------------------------------------------------------------x

07-Civ_______ (   )

**VERIFIED COMPLAINT**




Plaintiff, AWB LIMITED (hereinafter "AWB"), by its attorneys Freehill, Hogan & Mahar, LLP, as and for its Verified Complaint against Defendant BREAKBULK MARINE SERVICES LTD. (hereinafter "BMS"), alleges upon information and belief as follows:

1. This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure in that it involves a claim for the breach of a maritime contract of charter party. This case also falls under this Court's admiralty and maritime jurisdiction pursuant to 28 U.S.C. §1333. Jurisdiction is also proper pursuant to the Court's federal question jurisdiction pursuant to 28 U.S.C. §1331. Federal jurisdiction also exists because the action arises under the New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards at 9 U.S.C. §201 *et seq.* and/or the Federal Arbitration Act, 9 U.S.C. §1 *et seq.*

2. At all times relevant hereto, Plaintiff AWB was and still is a foreign business entity duly organized and existing under the laws of a foreign country with an address at 380 LaTrobe Street, Melbourne 3000, Victoria, Australia.

3. At all times relevant hereto, Defendant BMS was and still is a foreign business entity duly organized and existing under the laws of a foreign country with an office and place of business at 1 Lefebvre Street, St. Peter Port Guernsey, GY1 4JE Channel Islands.

4. On or about March 5, 1999, Plaintiff AWB chartered the M/V PANAMAX STAR from head owner, non-party Stanstead Shipping Company Limited ("Stanstead"), on an amended NYPE form for a period of approximately 4 to 7 months ("the head charter").

5. On or about April 29, 1999, Plaintiff AWB, as disponent owner, and Defendant BMS, as sub-charterer, entered into a maritime contract of charter party on an amended NYPE form for the use and operation of the M/V PANAMAX STAR for a period of 75/85 days.

6. The sub-charter between AWB and BMS was identical in all material respects to the head charter, with logical amendments. Both charters required bills of lading issued thereunder to incorporate all terms and conditions of the charters, including the clause requiring arbitration in London.

7. On May 20, 1999, there was shipped on board the vessel, under two bills of lading, some 47,250 mt of soy beans at Itacotiara, Brazil for carriage to China.

8. On May 21, 1999 there was a collision between the vessel and the M/V AUK in the Amazon River.

9. The collision caused a crack in the shell plating of the number 5 hold of the PANAMAX STAR thereby wetting some of the cargo and causing some of the cargo to leak from the hold.

10. Following the collision, all of the cargo from hold no. 5 was removed and temporary repairs were then effected to the vessel. The sound cargo was reloaded. The damaged cargo was jettisoned. The vessel then sailed for Chiwan on June 21, 1999.

11. During the course of discharge it was found that some of the cargo had suffered heat damage during the voyage which damage, upon information and belief, occurred independently of the incident in Brazil.

12. The cargo receivers, Shenzhen Nantian Oilmills Co. Ltd. ("SNO"), and their insurers arrested the vessel in order to obtain security in respect to their claims for the damage to and loss of the cargo.

13. Head Owner, Stanstead, posted security of $5.6 million in order to have the vessel released from arrest.

14. The vessel completed discharge on September 7, 1999 and sailed on September 13, 1999.

15. Subsequently, SNO and its insurers brought claims under the bills of lading against Stanstead before the Guangzhou Maritime Court seeking to recover for the lost and damaged cargo.

16. In May 2001, the Guangzhou Maritime Court entered judgment in favor of SNO and its insurers on the basis that the loss of the cargo in Brazil and the heat damage to the cargo during the voyage were both caused by reason by the vessel being unseaworthy in various ways.

17. Stanstead asserts that the judgment was appealed to the Guangdong Provincial High Court, which rejected the appeal, and then to the Supreme Court in Beijing, which declined to hear the case and instead referred the action back to the lower court for a re-trial.

18. As a result of the Chinese Court judgment, in January 2002, Stanstead alleges it paid SNO and its insurers to settle the cargo claim.

19. In accordance with the terms of the head charter, Stanstead thereafter commenced arbitration against AWB in London ("the head arbitration"), seeking to recover for the amounts paid to cargo interests plus the costs incurred in defending the action in China.

20. In February 2006 Stanstead filed an action against AWB in this Court under Rule B of the Supplemental Admiralty Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure seeking security for the head arbitration in the amount of $3,885,481.59 (which included a principal claim of $3,120,741.37 plus $764,740.22 for the costs of the arbitration and interest). Pursuant to that action Stanstead restrained certain electronic funds transfers being sent or from AWB. In response AWB posted alternative security in the sum of $3,885,481.59 in the form of a cash deposit to an escrow account in the joint names of Tisdale & Lennon LLC and DLA Piper Rudnick Gray Cary US LLP pending the publication of a final award in the London arbitration between Stanstead and AWB or as may be otherwise agreed between the parties, upon which posting Stanstead discontinued its Rule B action against AWB.

21. Stanstead asserts in the head arbitration that AWB is responsible for the sums which Stanstead was caused to pay to SNO and its insurers because the bills of lading presented to and signed by the Master of the PANAMAX STAR were not authorized and/or otherwise were presented in breach of the terms of the head charter in that they did not contain, among other terms of the charter, a clause requiring the cargo receiver to arbitrate with head owner Stanstead in London. Stanstead takes the position that if the bills of lading had been properly claused, it would not have been required to litigate the cargo claims in China and would have successfully defended against such claims in London arbitration.

22. If AWB is held liable and is caused to pay to Stanstead for the claims advanced by Stanstead in the head arbitration, AWB will be entitled to be indemnified from BMS for such sums as it was the breach of the sub-charter by BMS in presenting the improperly claused bills of lading to the Master which permitted cargo interests to pursue their claims in China rather than in London arbitration.

23. Independent of the claim for indemnity, BMS breached the sub-charter by wrongly deducting and/or withholding hire in the amount of $239,807.26 which was required to be paid under the terms of the sub-charter.

24. Despite due demand, Defendant BMS has failed and otherwise refused to pay the full hire due to AWB.

25. AWB has commenced arbitration in London against BMS in which it seeks to recover for the wrongful withholding of hire and indemnity for the sums AWB is liable to pay to Stanstead. AWB expressly reserves the right to arbitrate the merits of its dispute in London.

26. AWB brings this action in order to obtain security for its claims in London arbitration against BMS.

27. Upon information and belief, and after investigation, Defendant BMS cannot be "found" within this district for the purpose of Rule B of the Supplemental Rules of Certain Admiralty and Maritime Claims, but Plaintiff is informed that Defendant has, or will shortly have, assets within this District comprising of, *inter alia*, cash, funds, credits, debts, wire transfers, electronic funds transfers, accounts, letters of credit, freights, sub-freights, charter hire and/or sub-charter hire, of, belonging to, due or for the benefit of the Defendant (hereinafter, "ASSETS"), including but not limited to "ASSETS" at, being transferred through, or being

transferred and/or wired to or from banking institutions or such other garnishees who may be served with a copy of the Process of Maritime Attachment and Garnishment issued herein.

28. As best as presently can be computed, the total amount sought to be attached pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims by AWB against BMS includes:

(a) The wrongfully deducted hire in the amount of $239,807.26;

(b) Interest on the above sum of $177,983.86, calculated at the rate of 6.62% per annum, compounded quarterly, from September 10, 1999 (date of final hire statement) to February 22, 2008 (anticipated date of arbitration award), which interest is recoverable under English law;

(c) The $3,885,481.59 for which AWB has previously posted as security in favor of Stanstead (which includes compound interest claimed by Stanstead up to February 22, 2008, the anticipated date of the arbitration award);

(d) Legal fees, arbitrator fees and costs that will be incurred by AWB in respect of the London arbitration with BMS which are recoverable pursuant to English law, and which, pursuant to the advices of AWB's solicitors, are estimated to be in the sum of $475,000;

**For a total sought to be attached of $4,778,272.71.**

WHEREFORE, Plaintiff AWB LIMITED prays:

a. That process in due form of law according to the practice of this Court in admiralty and maritime jurisdiction issue against the Defendant, citing it to appear and answer under oath all and singular the matters alleged, failing which a default will be taken against it in the principal amount of $4,125,288.85, plus interest, costs and attorneys fees;

b. That since Defendant cannot be found within this District pursuant to Supplemental Rule B, all tangible or intangible property of the Defendant, up to and including the sum of **$4,778,272.71,** be restrained and attached, including but not limited to any cash, funds, credits, wire transfers, electronic funds transfers, accounts, letters of credit, debts, freights, sub-freights, charter hire, sub-charter hire, and/or other assets of, belonging to, due or for the benefit of the Defendant (collectively "ASSETS"), including but not limited to such "ASSETS" as may be held, received or transferred in its own name or as may be held, received or transferred for its benefit at, through, or within the possession, custody or control of such banking institutions and/or any such other garnishees who may be served with a copy of the Process of Maritime Attachment and Garnishment issued herein; and

c. That this Court retain jurisdiction over this matter for purposes of any subsequent enforcement action as may be necessary; and,

d. For such other, further and different relief as this Court may deem just and proper in the premises.

Dated: New York, New York
May 22, 2007

FREEHILL HOGAN & MAHAR, LLP
Attorneys for Plaintiff
AWB LIMITED

By: [signature]
Michael E. Unger (MU 0045)
Manuel A. Molina (MM 1017)
80 Pine Street
New York, NY 10005
(212) 425-1900 / fax (212) 425-1901

**ATTORNEY VERIFICATION**

State of New York )
) ss.:
County of New York )

MANUEL A. MOLINA, being duly sworn, deposes and says as follows:

1. I am an attorney with the law firm of Freehill Hogan & Mahar, LLP, attorneys for Plaintiff in this action, I have read the foregoing Verified Complaint and know the contents thereof, and the same is true to the best of my knowledge, information and belief.

2. The sources of my information and the grounds for my belief are communications, information and documentation provided by our client.

3. The reason this verification is made by an attorney and not by the Plaintiff is because the Plaintiff is a foreign entity, none of whose officers are presently within this Judicial District.

Manuel A. Molina

Sworn to before me this
22 day of May, 2007.

Notary Public

HAZEL S. ROSENTHAL
Notary Public, State of New York
No. 01RO4641178
Qualified in Queens County
Certified in New York County
Commission Expires Dec. 31, 2010